NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| KONINKLIJKE PHILIPS N.V., | : |
| | : Civil Action No. 11-3684 (DMC) |
| Plaintiff, | : |
| | : |
| v. | : MEMORANDUM OPINION |
| | : |
| HUNT CONTROL SYSTEMS, INC., AN ASSUMED TRADE NAME FOR CARIBE CORPORATION, | : : : |
| | : |
| Defendant. | : : |

**CLARK, Magistrate Judge**

This matter comes before the Court upon Plaintiff Koninklijke Philips N.V.'s ("Philips") motion for a protective order. [Docket Entry No. 93].   Defendant Hunt Control Systems, Inc., An Assumed Trade Name for Caribe Corporation ("Caribe" or "Hunt") has filed opposition to Philips' motion. [Docket Entry No. 95].   The Court has fully reviewed and considered all arguments made in support of, and in opposition to, Philips' motion.   The Court considers Philips' motion without oral argument pursuant to L.Civ.R. 78.1(b).   For the reasons set forth more fully below, Philips' motion for a protective order is GRANTED.

**I.     BACKGROUND**

Philips filed the instant action on June 27, 2011 pursuant to 15 U.S.C. §1071(b)(1) seeking relief from a decision of the Trademark Trial and Appeal Board ("Board") of the United States Patent and Trademark Office ("PTO"). *See Compl.*; Docket Entry No. 1.   Philips alleges that "[t]he Board erred in sustaining [Hunt's] Opposition" to Philips' registration of the tagline "Sense

and Simplicity." *Id.* at ¶17.   As such, Philips seeks reversal of the Board's decision by this Court and requests that the registration of their mark be allowed to proceed.

In March 2012, Hunt interviewed one Phil Fedele, "a Philips IT/ESI discovery professional" regarding Philips' ESI (electronically stored information) practices. *Philips' Brief in Support* at 1; Docket Entry No. 93-1.   Months later, Hunt noticed a deposition for an IT witness, which was objected to by Philips.   By Order dated February 25, 2013, the deposition was stayed by the Hon. Joseph A. Dickson, U.S.M.J. to allow Hunt to request from Philips responses for eight questions "that Hunt alleges were not adequately answered by Philips' IT representative, Phil Fedele[.]" *See* Docket Entry No. 53 at 4.   Judge Dickson further gave leave to Hunt to "re-apply once the parties have met and conferred in good faith." *Id.*   In November 2013, Hunt reissued its notice of deposition and again, Philips objected. *Hunt's Brief in Opposition* at 6; Docket Entry No. 95.   The issue was brought to the attention of the undersigned by letter dated December 9, 2013 and, after receiving several additional letters and declarations concerning the issue, an in-person was scheduled for January 27, 2014 to discuss same.   During the conference, the Court granted Philips leave to file a motion for a protective order with respect to Hunt's requested deposition of an IT witness pursuant to Fed.R.Civ.P. 30(b)(6).   In so ordering, the Court directed that Hunt "explain why there are material deficiencies" in the discovery already produced. *Transcript of 1/27/14 Hearing* at 28:4-5; Docket Entry No. 90.   The instant motion followed.

II.     **LEGAL STANDARD**

Federal Rule of Civil Procedure 26 governs the scope of discovery in federal litigation. Pursuant to Rule 26(b)(1), the scope of permissible discovery is quite broad.   Indeed, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1). While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). Upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action. Notably, Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele-Radio Sys. Ltd. v. De Forest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J. 1981).

Nevertheless, while undeniably broad, there are limits to the permissible scope of discovery. For example, Rule 26(b)(2)(C) specifically requires courts to limit discovery where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" and where "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Rule 26(b)(2)(C)(i) & (ii). Similarly, pursuant to Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" In moving for a protective order, "[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *United States v. Garrett,* 571 F.2d 1323, 1326, n.3 (3d

Cir. 1978). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

### III. DISCUSSION

The Court shall first address Hunt's arguments in support of the 30(b)(6) deposition. Hunt maintains that an IT deposition is needed in order to discover whether Philips is using the appropriate search tools for ESI discovery. Along with its opposition, Hunt has submitted the declarations of its expert, Sean McNeill, "an Information Technology (IT) professional with Catapult Systems, The Microsoft Consulting Company." *Declaration of Sean McNeill* at ¶1; Docket Entry No. 95-2. Mr. McNeill has surmised that "due to its cloud-based IT structure, Philips has available to it some of most (*sic*) sophisticated and comprehensive state-of-the-art document search and location tools" but alleges that "Philips refuses to use these tools to satisfy its obligations." *Hunt's Br. Opp.* at 4. As such, Hunt submits that it "is entitled to the deposition to understand why and how these sophisticated tools are somehow inappropriate in spite of their clear design to accommodate eDiscovery." *Id.* at 5. Additionally, Hunt outlines seven categories of documents that it claims are materially deficient, which are as follows:

1. Significant Philips Documents not produced by Philips, but located by Hunt.
2. Production synopsis indicating low portion of factually important documents located.
3. Missing custodian identifications.
4. Missing actual use documents.
5. Missing documents indicating awareness of Defendant.
6. Missing documents indicating likely confusion.
7. Production synopsis suggesting that only a low percentage of apparent emails are being located.

*See generally id.*

Lastly, Hunt maintains that a deposition is not burdensome and indeed, "is the proper way

to resolve disputes over ESI capabilities such as those in the instant matter." *Id.* at 14. Hunt contends that under Rule 26(b)(2)(C), the Court must balance whether the burden of the proposed discovery outweighs its potential benefit, and argues that the "deposition is simply not so burdensome as to outweigh the likely benefits[.]" *Id.* at 15-16.

Philips seeks a protective order "to prevent Hunt from proceeding with its Rule 30(b)(6) 'IT Deposition'." *Philips' Br. Supp.* at 1. As a procedural matter, Philips contends that Judge Dickson did not stay the deposition pending a review of Philips' initial production, but only pending Philips' responses to the eight IT questions. *Id.* at 5. Philips maintains that Hunt did not "reapply" for the deposition, as Judge Dickson's Order permitted, but instead simply re-noticed the deposition again in late November 2013. *Id.* at 5-6. Further, Philips responds to Mr. McNeill's declaration by submitting a declaration from Mr. Fedele, who confirmed that Philips' answers to the eight additional questions were accurate, that Philips has always used "a custodian-based approach to collecting ESI[]." *Id.* at 8. In addition, Mr. Fedele notes that Philips outsources its ESI collection to Microsoft Online Services ("MOS") and that the "contract with MOS neither includes, contemplates, nor currently permits the type of searching and collection that Hunt and its expert suggest[.]" *Id.* at 9 (quotations omitted). Philips also submitted two additional declarations (that of Mr. Thomas F. Matzen and Mr. Eric Friedberg) attesting to the reasonableness of Philips' approach to ESI discovery and also certifying that the approach proposed by Mr. McNeill is burdensome. *See id.* at 9-11.

As to Hunt's claimed material deficiencies, Philips argues that these documents have already been produced and are in Hunt's possession. *Id.* at 16. Further, Philips states that its "document production sufficiently responds to Hunt's document requests as appropriately

circumscribed by Philips' objections and/or Hunt's own requests." *Id.* at 17.

The Court finds that Philips' request for a protective order is warranted and that Hunt's requested 30(b)(6) deposition of an IT witness should be denied. First, the Court notes with some skepticism the propriety of Hunt's reissuing of the deposition notice in November 2013. It appears to the Court that Judge Dickson's Order, in directing Hunt to "re-apply" once the parties met and conferred, did not contemplate a new notice of deposition, but instead directed the Hunt to re-raise the issue before the Court if it felt that the meet and confer and answers to the additional eight questions were insufficient. Nevertheless, there has been substantial briefing and conferences in connection with the requested deposition and as such, the Court shall address the arguments made by counsel in support and in opposition thereto.

First, the Court finds that Philips has made adequate representations to this Court that its approach to conducting and gathering ESI discovery materials is reasonable. Likewise, the Court finds that Hunt has failed to make the requisite showing that Philips' production has been materially deficient. Many of Hunt's categories of deficient production are speculative and suggestive in nature and, indeed, have been addressed and explained adequately by Philips. Hunt's alleged dissatisfaction with the result of Philips' production is not enough to reopen the door to the collection of ESI discovery under an entirely different method. Moreover, these proposed methods have been supported only by Mr. McNeill, who merely states that alternative tools are available to Philips and that Philips has failed to utilize them. Mr. Fedele has certified that the answers to Hunt's questions are true and accurate and therefore, there is simply no compelling reason proffered by Hunt to permit a 30(b)(6) deposition of an IT witness and the possible re-opening of document discovery.

Second, even if the Court was persuaded that an alternative approach to ESI collection was more appropriate than the custodian-based search used in this matter, there is still not enough evidence to show that conducting another search under a new method would substantially alter the production already made. As noted above, Hunt's proffered deficiencies do not rise to such a level as to disquiet the Court that production is materially deficient. In this regard, another approach to collect ESI discovery would be duplicative and an inefficient use of time a resources.

Lastly, the Court is not persuaded by Hunt's argument that the benefits of the deposition would likely outweigh the burden associated with it. Indeed, during the January 27th hearing, the Court remarked as follows:

> THE COURT: And, you know, I could take a seat-of-the-pants approach. I mean, I asked you the question that is the deposition itself particularly burdensome, and you candidly said, well, it's not really the deposition, it's what would happen after the deposition. I could order that the deposition go forward, and then we could all get together after the deposition and figure out, you know, whether it resulted in any basis for them -- or for you producing any -- any additional documents. I'd rather not do that, though. I'd rather -- I'd rather have you brief this a little more fully and try to decide right now whether we go forward with more discovery or whether document discovery is at an end.

*Transcript of 1/27/14 Hearing* at 25:23-25 – 26:1-9; Docket Entry No. 90.

As such, the Court realized that it was not the deposition itself that was likely to cause a substantial burden, but rather the possibility of opening the door to more (and likely unproductive) discovery with no apparent end in sight. As the Court found above, it is clear that the proposed deposition has the potential to cause tremendous burden to Philips, as it would essentially put all ESI discovery already conducted in jeopardy. As such, the Court candidly finds that the marginal benefit that would emanate to Hunt is heavily outweighed by the burden that would be sustained by Philips.

## IV.     CONCLUSION

For the reasons set forth above, Philips' motion is GRANTED.   An appropriate Order accompanies this Opinion.


Dated: April 16, 2014

<u>s/   James B. Clark, III</u>
**HONORABLE JAMES B. CLARK, III**
**UNITED STATES MAGISTRATE JUDGE**
