<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| KONINKLIJKE PHILIPS N.V., | |
| Plaintiff/Counterclaim Defendant, | **Civil Action No. 11-3684 (SRC)(CLW)** |
| v. | **OPINION** |
| HUNT CONTROL SYSTEMS, INC., AN ASSUMED TRADE NAME FOR CARIBE CORPORATION, | |
| Defendant/Counterclaim Plaintiff. | |

<u>**CHESLER**</u>, District Judge

      This matter comes before the Court upon the motion to strike the jury demand by Plaintiff/Counterclaim Defendant Koninklijke Philips N.V. ("Philips") [Docket Entry 220]. Defendant/Counterclaim Plaintiff Hunt Control Systems, Inc. ("Hunt") opposes the motion [Docket Entry 221]. The Court has considered the papers filed by the parties and proceeds to rule on the motions without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, the Court will grant Philips's motion to strike the jury demand.

**I.    BACKGROUND**[1]

      This action is a trademark dispute between Hunt, the owner of the "Simplicity" trademark for goods related to its lighting business, and Philips, who seeks to register the trademark "sense

---

[1] The factual background of this case is familiar to the parties and is, moreover, set forth in this Court's June 29, 2016 opinion [Docket Entry 214]. The Court repeats only the facts that are relevant to this motion.

1

and simplicity" with the United States Patent and Trademark Office ("PTO") for goods related to its lighting business.

On June 8, 2004, Hunt applied to the PTO to register "Simplicity" as a trademark for industrial and commercial lighting control panels. The PTO issued Registration No. 3254393 to Hunt for "Simplicity" on June 26, 2007, and Hunt began using the mark on its wallbox dimmers, lamps, and bulbs. At that time, Philips held an international trademark registration for its global tagline, "sense and simplicity," with a priority date of May 27, 2004. Philips had launched its "sense and simplicity" campaign worldwide in September 2004, and used this tagline for a wide variety of products and services. On September 3, 2004, Philips filed a request for extension of its international registration to the United States, under the Madrid Protocol treaty.

Hunt became aware that Philips was using "sense and simplicity" in connection with lighting at the Light Fair show in 2006. Thus, in response to Philips's application to extend its international registration for "sense and simplicity", Hunt filed Opposition No. 91173417 before the Trademark Trial and Appeal Board ("TTAB") on October 13, 2006, alleging that Hunt was the senior user of the mark "Simplicity" on six specific lighting goods. On April 27, 2011, the TTAB sustained Hunt's Opposition as to the six specific goods Hunt outlined.

Two months later, Philips filed a Complaint with this Court for *de novo* review of the portions of the TTAB decision adverse to Philips, pursuant to 15 U.S.C. § 1071(b) [Docket Entry 1]. Hunt filed its Answer on September 6, 2011, and raised three counterclaims for trademark infringement, misappropriation, and unfair competition. [Docket Entry 7]. Hunt sought monetary damages in the form of "lost and diverted sales," "corrective advertising," "reasonable royalty," and "gains, profits and advantages to Philips." [*Id.*].

On October 23, 2015, both parties moved for summary judgment and Hunt moved to exclude certain expert reports and testimony [Docket Entries 179-191].  The Court denied all motions, with one exception.  On June 29, 2016, this Court granted in part Philips's motion for summary judgment, holding that Hunt did not provide enough evidence to seek monetary relief on any of its counterclaims [Docket Entry 214].  Hunt can now only seek injunctive relief.

**II.     DISCUSSION**

   **a.   THE FEDERAL RIGHT TO TRIAL BY JURY**

Philips argues that because Hunt's only remaining remedy is an injunction, only equitable issues remain in this case, and thus, Hunt has no constitutional right to a jury trial. (Mov. Br. at 1).  The United States Constitution safeguards the right to a jury trial "in suits at common law, where the value in controversy shall exceed twenty dollars."  U.S. CONST. amend. VII.  The phrase "suits at common law" refers to those suits in which legal rights are to be determined, not to suits where equitable rights alone are recognized and administered.  *See Chauffers, Teamsters and Helpers, Local 391 v. Terry,* 494 U.S. 558, 564 (1990) (citing *Parsons v. Bedford, Breedlove & Robeson,* 28 U.S. 433, 447 (1830)).

The Supreme Court instructs courts to conduct two tests to distinguish between legal and equitable actions for Seventh Amendment purposes: a remedial test and a historical test. *Chauffers*, 494 U.S. at 565.  In order to conduct the remedial test, which is the more important test, courts should examine the remedy sought and determine whether it is legal or equitable in nature.  *Id.*  To conduct the historical test, the Court is to compare the cause of action to 18th-century actions brought in England prior to the merger of the courts of law and equity.  *Id.*  Because finding a historically analogous cause of action may be difficult and imprecise, courts

place greater emphasis on the relief sought when determining whether an action is legal or equitable. *See Tull,* 481 U.S. at 421.

### i. THE REMEDIAL TEST

Under the remedial test, this Court finds that no right to a jury attaches. Where the remedy sought is an injunction, the remedy is equitable, and there is no right to a jury trial according to the Seventh Amendment. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 719 (1999); *Twp. of Haddon v. Royal Ins. Co. of Am.*, 929 F. Supp. 774, 778 (D.N.J. 1996). When a court finds that a party cannot provide evidence of damages that are essential to its only legal claims such that only equitable claims remain, a federal district court can strike a jury demand without offending the Seventh Amendment. *AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 222-23 (3d Cir. 2009).

Here, this Court's June 29, 2016 Order made clear that Hunt failed to provide damage evidence necessary to sustain its legal claims for monetary relief and thus, Hunt's only available remedy is an injunction. In that Order, this Court found that Hunt failed to show evidence that Philips's infringement damaged Hunt, that Philips was unjustly enriched by the use of its tagline, or that Philips acted in bad faith. Therefore, Hunt's claims for damages in the form of lost sales or lost profits, an accounting of profits, reasonable royalty, and corrective advertising were denied. Now, because the only remaining relief available to Hunt is an injunction, the action is purely equitable. Thus, according to the remedial test, this Court should grant Philips's motion to strike the jury demand.

### ii. THE HISTORICAL TEST

Although Hunt admits that the remedial inquiry is the more important test, Hunt argues that this Court must still give weight to the historical inquiry. (Opp. Br. at 5). Hunt argues that

that the historical test weighs in favor of a jury trial in this case because before the merger of law and equity, a party bringing an unfair competition claim had the choice of bringing the case before a court of law or a court of equity. (*Id.* at 4).

Hunt's argument proceeds as follows. First, Hunt argues that the federal court must apply the substantive law and choice of law provisions of the state in which it sits to its state law counterclaims. (*Id.* at 6-7). Here, Hunt brings two state law counterclaims: unfair competition and misappropriation.[2] (*Id.* at 4). New Jersey adopts the "most significant relationship test" in its choice of law analysis, which has a particularly emphasis on the place where the injury occurred. (*Id.* at 7). Hunt explains that in trademark cases, the injury occurs in the state in which the infringed intellectual property is held. (*Id.* at 7). Here, Hunt claims, the intellectual property was held in Colorado. (*Id.* at 7). Thus, Hunt goes on to say that according to New Jersey's choice of law provisions, the substantive law of Colorado applies to the state law claims. (*Id.* at 4, 6-7). Hunt argues that Colorado recognizes a common law tort of unfair competition. (*Id.* at 8). Further, Hunt argues that Colorado law "does not conflate the available remedy and the nature of the claim" and thus the historical test requires the Court to compare only the cause of action, and not the remedy, to pre-merger actions.[3] (*Id.* at 8-9). Ultimately, Hunt argues that the cause of action of unfair competition could have been tried in either courts of law or courts of

---

[2] In addition to arguing that unfair competition is a state law claim, Hunt argues that its misappropriation claim is a state law claim and state law applies. (Opp. Br. at 6). However, Hunt does not argue that misappropriation claims were tried by juries before the merger of law and equity. Therefore, that the misappropriation claim is a state law claim is irrelevant to the analysis.

[3] Hunt first cites *Hickerson v. Vessels,* 316 P.3d 620 (Colo. 2014) for the proposition that equitable remedies can apply to legal claims in Colorado, but the case has nothing to do with a jury demand. Thus, this case does not help Hunt's argument.

5

equity prior to the merger, and therefore according to the historical test, Hunt is entitled to a jury. (*Id.* at 8).

Hunt's first error is the application of Colorado law. When an action is brought in federal court, the determination of whether there is a right to a jury trial is based on federal law, rather than state law, regardless of whether the Court is sitting in diversity or in any other action. *Simler v. Conner*, 372 U.S. 221, 222 (1963); *see also Ettelson v. Metro. Life Ins. Co.*, 137 F.2d 62, 65 (3d Cir. 1943) (explaining that federal law applies in federal court to the question of whether the defendant is entitled to have its counterclaim tried by a jury). "In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law, but the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law." *Simler,* 372 U.S. at 222 (explaining that federal law applies to this inquiry in order to ensure uniformity as demanded by the Seventh Amendment).[4]

---

[4] Even if Colorado law applied to the determination of whether there was a right to a jury trial in this case (which it does not), the Colorado law that Hunt cites does not support the conclusion that the parties are entitled to a jury. Hunt first cites *Hickerson v. Vessels,* 316 P.3d 620 (Colo. 2014)*,* which cites another Colorado case, *American Family Mut. Ins. Co. v. DeWitt*, 218 P. 3d 318 (2009). (Opp. Br. at 8). The *American Family* Court highlights that Colorado courts, just like the federal courts, determine whether a party is entitled to a jury based on the remedial and historical tests and that the most important consideration is the remedy sought. The *American Family* Court explains:
> First, courts examine the nature of the remedy sought. Actions seeking monetary damages are considered legal while actions seeking to invoke the coercive power of the court, such as those seeking injunctions or specific performance, are deemed equitable. Second, courts look to the historical nature of the right that a plaintiff is seeking to enforce. A claim is equitable when the plaintiff is seeking to enforce a right originally created in or decided by equity courts. We have *generally preferred using the remedial method* in deciding where a claim is legal or equitable.

218 P. 3d at 324 (emphasis added). The Court explained that the "determining issue . . . is the characterization of the nature of the relief sought." *Id.* (citing *Continental Title Co. v. Dist. Ct.,* 645 P.2d 1310, 1316 (Colo. 1982). Thus, just like federal courts, Colorado courts focus on the type of remedy sought in determining whether a party is entitled to a jury. Here, the only remedy

Hunt's next error is its assumption that Hunt would have been able to choose whether to bring its unfair competition claim in a court of law or a court of equity in pre-merger, 18th century England.  Hunt cites two law review articles to support its position, but these articles actually explain that historically, when a party was seeking only an injunction as a remedy for its unfair competition claim, it would bring suit in a court of equity.  Harry D. Nims, *Damages and Accounting Procedure in Unfair Competition Cases,* 31 CORNELL L. Q. 431, 433 (1946) ("In the past, legal principles were administered in law courts and equitable principles in chancery courts. One who was injured by acts of unfair competition or infringement of a trade-mark could sue in equity for an injunction and force the defendant to disclose his profits and account for them; or he could get an injunction in a court of equity and then go to a law court and sue for his damages. . . .  Most unfair competition-trade-mark cases are brought in equity.  Those at law are rare."); Mark A. Thurmon*, Ending the Seventh Amendment Confusion: A Critical Analysis of the Right to A Jury Trial in Trademark Cases*, 11 TEX. INTELL. PROP. L.J. 1, 1 (2002) (citing Bruce S. Sperling, *The Right to Jury Trial in a Federal Action for Trademark Infringement or Unfair Competition*, 62 TRADEMARK REP. 58 (1972)) ("Although the law of trademark infringement and unfair competition did not develop until after 1800 both in England and in this country, analogous actions for patent and copyright infringement were known in England prior to 1791. They demonstrate that actions for an injunction, with or without appurtenant claims for damages or profits, would have been heard 'in equity.'").  Therefore, Hunt's unfair competition claim would have been brought in equity pre-merger because Hunt is seeking an injunction.

---

available is injunctive relief, an equitable remedy, and no monetary claims have survived. Therefore, even if Colorado law applies, Hunt is not entitled to a jury.

Finally, even assuming arguendo that Hunt was correct that historically it could have chosen whether to bring its claim in a court of law or a court of equity, this does not mean that the historical test weighs in favor of a jury trial. Instead, it means that the historical test is "indeterminate" and the remedial inquiry "therefore, is not only more important, it is dispositive in this context." *Ending the Seventh Amendment Confusion*, at 31. Thus, the remedial test, which here clearly shows that there is no right to a jury trial, would be dispositive. In sum, Hunt is not entitled to a jury trial because Hunt can only seek an injunction for its counterclaims.

### B. THE COURT'S DISCRETION TO EMPANEL AN ADVISORY JURY

Hunt further argues that the Court should use its discretion to empanel an advisory jury. (Opp. Br. at 9-10). According to Federal Rule of Civil Procedure 39(c)(1), "[i]n an action not triable of right by a jury, the court, on motion or on its own *may* try any issue with an advisory jury" (emphasis added). Hunt admits that the decision to empanel a jury is "exclusively committed to the Court's discretion." (Opp. Br. at 9). If a court does empanel an advisory jury, "the court shall find the facts specially and state separately its conclusions of law thereon." FED. R. CIV. P. 52(a) (emphasis added). "[F]indings by an advisory jury are not binding, for the ultimate responsibility for finding the facts remains with the court. . . ." *Wilson v. Prasse,* 463 F.2d 109, 116 (3d Cir. 1972). "District courts are also free to reject their verdicts, as long as doing so is not independently erroneous." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 249 (3d Cir. 2013) (citing *Wilson,* 463 F.2d at 116).

Here, Hunt argues that this Court should empanel an advisory jury because this case involves many credibility and weight determinations that should be made by individuals who lack the Court's familiarity with the case. (Opp Br. at 10). Hunt further argues that a jury is "uniquely suited" to determine issues of likelihood of confusion because they will provide a

suitable "cross-section of consumers" [5] and the likelihood of confusion is an "inherently factual" issue.[6] (*Id.* at 9). Hunt goes on to argue that this case will establish new aspects on the law of unfair competition and thus a jury should be involved. (*Id.*). Finally, Hunt suggests that the Court's role should be limited to making legal rulings and instructing the jury. (*Id.* at 10).

Hunt, however, misconstrues the role of a court that empanels an advisory jury. Even if this Court were to appoint an advisory jury, the Court's role would not change; the Court would still need to make factual findings and legal conclusions in the same way as it would without an advisory jury, and the Court could still reject the advisory jury's determinations. Thus, empaneling an advisory jury would be duplicative of the Court's role. Moreover, the Court is fully capable of hearing this case as a bench trial and has extensive experience with these types of cases. In turn, this Court does not deem it necessary to empanel an advisory jury.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Philips's motion to strike the jury demand. An appropriate Order will be filed herewith.

                                                                 s/ Stanley R. Chesler
                                                                 STANLEY R. CHESLER
                                                                 United States District Judge

Dated: November 21, 2016

---

[5] Hunt relies on *Anheuser Busch, Inc. v. L & L Wings, Inc.*, 962 F.2d 316 (4th Cir. 1992), for the proposition that juries are well-suited to evaluating whether an ordinary consumer would be confused. (Opp. Br. at 9). This argument is unpersuasive because *Anheuser Busch* did not deal with the empaneling of an advisory jury.

[6] With respect to Hunt's argument that a jury from New Jersey will have a unique perspective on market saturation claims in their locality, Hunt has not confined its claims of "market saturation" to New Jersey and Hunt alleges that the effects are felt in all fifty states. (Rep. Br. at 6).